**Marilyn J. DEARSMAN, Plaintiff,**

v.

**Jerome KURTZ, Defendant.**

**Civ. A. No. 80–2023.**

United States District Court, District of Columbia.

June 26, 1981.

Joel P. Bennett, Washington, D. C., for plaintiff.

Whitney M. Adams, Asst. U. S. Atty., Washington, D. C., for defendant.

## MEMORANDUM

JOHN LEWIS SMITH, Jr., District Judge.

Plaintiff, an employee of the Internal Revenue Service (IRS), brought this action against the Commissioner of the IRS in his official capacity. Plaintiff asserts four claims and requests reinstatement, back pay, and attorney's fees. In Count I of the complaint, plaintiff seeks relief pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* In Count II plaintiff seeks relief under the Civil Service Reform Act of 1978, 5 U.S.C. §§ 1101 *et seq.* (CSRA), alleging various violations. In Count III, plaintiff asserts a violation of her Fifth Amendment rights to due process, for which plaintiff invokes jurisdiction under 28 U.S.C. §§ 1331, 1343(4), and 1361. Finally, in Count IV, plaintiff alleges a violation of the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.*, on the ground that the agency's demotion of her constituted an arbitrary, capricious, and illegal action. Presently before the Court is defendant's motion to dismiss or in the alternative for summary judgment on all of Counts II–IV, and much of Count I. Not included in the motion is that part of Count I based upon incidents occurring after February 1977.

Plaintiff began employment with the IRS in 1962 as a GS–5. By September, 1972, she had been temporarily promoted to GS–14 and in 1973 was assigned to Mexico City as an Assistant Revenue Service Representative. Her promotion was made permanent in November of 1973. In 1975, she was transferred to Caracas, Venezuela, and in 1976 from there to Tehran, with another promotion to Revenue Service Representative (RSR), at a grade of GS–15. An RSR is assigned to a United States embassy or consulate, and is responsible for the IRS operations of the post. An RSR represents the Director of the Office of International Operations of the IRS in all matters that may be delegated.

On March 17, 1977, plaintiff filed a formal complaint with the IRS Equal Employment Opportunity Office, asserting a continuing pattern of sex discrimination against her by the IRS Office of International Operations (OIO). She asserted that beginning in 1974 the Director of the OIO and his subordinates had attempted to force plaintiff out of her position because of her sex. Among the acts alleged were improper and untimely bills for shipments of excess weight in connection with plaintiff's various moves; transfers of jurisdiction from posts she was assigned to, or failure to abide by the jurisdictional limits; failure to honor requests for information and adequate staff; various difficulties in arranging for and reimbursing travel expenses; various administrative difficulties; poor evaluations and lack of promotion; and harassment. On March 2, 1979, the IRS recommended a finding of no discrimination because the matters complained of were not unique to plaintiff. On April 10, 1979 the Department of Treasury issued a final agency decision of no discrimination. Plaintiff appealed to the Equal Employment Opportunity Commission, and that appeal has been pending for more than 180 days.

In May of 1979 plaintiff was reassigned from Tehran to the consulate in Sao Paulo, Brazil. At that post she was informed she would be required to act as a Duty Officer, an assignment she had never had before. The function of a Duty Officer is to be available 24 hours a day, generally for seven days at a time, to assure that Americans overseas have access to the consul in emergencies. Plaintiff alleges that the post of Duty Officer is normally given to State Department personnel who had the necessary training, and that RSRs were not qualified for and had not performed such duties in the past. She also alleges her superiors

agreed with her and were requesting a legal opinion from the State Department on the question. After being informed by the Ambassador that IRS as well as other employees were to perform the Duty Office function, and after meeting with the Consul General, plaintiff stated she would not serve as Duty Officer until she had received the legal opinion the IRS was requesting. Plaintiff was then informed by the IRS that she had no authority to refuse to perform the function, and she was later told that the IRS recognized the authority of the Ambassador to assign IRS personnel as Duty Officers. However, plaintiff again refused to perform the duty, and by letter dated December 27, 1979, and delivered January 2, 1980, she was issued a notice of proposed adverse action, and a notice of recall to Washington. On December 31, 1979, she filed a second discrimination complaint for the imposition of the Duty Officer requirement on her. On February 15, 1980, she filed a third complaint, alleging further discrimination after her return from Brazil. On March 11, 1980, plaintiff was demoted to GS–13 for failure to follow instructions. That action prompted a fourth complaint. These latter complaints allege discrimination, harassment, and reprisal, particularly with regard to the demotion. Plaintiff filed this action on August 11, 1980.

Count I of plaintiff's complaint seeks relief under Title VII on the basis of a series of alleged acts of discrimination. Plaintiff filed an administrative complaint concerning 22 of these acts on March 17, 1977. All but one of the incidents took place before February 1977. Defendant contends that the Court lacks subject matter jurisdiction over plaintiff's Title VII claims based on the 21 acts occurring before February, 1977, because plaintiff failed to file a timely administrative complaint with respect to those incidents and has, therefore, failed to exhaust her administrative remedies. While plaintiff does not deny that failure to initiate administrative proceedings within the required time limits is normally a bar to claims based upon isolated incidents of discrimination, she argues that the facts as

stated here are within the doctrine of a continuing violation. *See Verzosa v. Merrill Lynch, Pierce, Fenner & Smith*, 589 F.2d 974, 976–77 (9th Cir. 1978). Defendant responds by citing *United Airlines, Inc. v. Evans*, 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977), which stated:

A discriminatory act which is not made the basis for a timely charge is the legal equivalent of a discriminatory act which occurred before the statute was passed. It may constitute relevant background evidence in a proceeding in which the status of a current practice is at issue, but separately considered, it is merely an unfortunate event in history which has no legal consequences. Respondent emphasizes the fact that she has alleged a *continuing* violation.... But the emphasis should not be placed on mere continuity; the critical question is whether any present *violation* exists. *Id.* at 558, 97 S.Ct. at 1889 (emphasis in original).

■ Even assuming that the theory of continuing violations survives *Evans* in the context of a series of discriminatory acts, this case does not present the proper circumstances. Plaintiff does not allege a system or practice which is discriminatory or a present violation. *See id.; Aikens v. U. S. Postal Service*, 642 F.2d 514, 516 n.1 (D.C. Cir.1980); *Macellaro v. Goldman*, 643 F.2d 813, 816 (D.C.Cir.1980). Moreover, plaintiff can show little significant injury as a result of the alleged violations since she was promoted during the period when they occurred. *See Macellaro*, 643 F.2d at 816. Thus, taking only the facts proffered by plaintiff, she has not established that the incidents cited as discriminatory are anything more than an isolated series which do not constitute a continuing violation. *See also Briscoe v. Director, Administrative Office*, 20 FEP Cases 516, 518–19 (D.D.C. 1977); *White v. Schlesinger*, No. 79–1017 (D.D.C. December 5, 1979).

Count II is predicated upon certain sections of the Civil Service Reform Act (CSRA), 5 U.S.C. § 1101 *et seq.* The grounds cited as the basis for this claim are that the demotion of plaintiff was a prohib-

ited personnel practice in violation of Section 2302(b); that the IRS failed to properly train plaintiff, in violation of Section 2301(b)(7); and that the adverse action was not in accord with the requirements of Section 4303. Defendant responds that no private right of action exists to enforce the first two provisions cited, and that Section 4303 is inapplicable since it was not the basis of the action taken. Defendant further argues that the Court should grant summary judgment on that part of the claim arising under the section which was in fact the basis for the action, 5 U.S.C. § 7513.

■ The initial question is whether this Court has jurisdiction to hear any claims arising under the CSRA. The Act provides a detailed administrative scheme for resolution of complaints arising under the Act, *see generally* §§ 7501–7703. The Act specifically creates an administrative appellate authority, the Merit Systems Protection Board (MSPB), Sections 1201–09, 7513, and vests judicial review of MSPB decisions in either the Court of Claims or a Court of Appeals. Section 7703(b)(1). The only provision establishing jurisdiction here is Section 7702(e), which allows the Court to hear complaints involving discrimination "to the same extent and in the same manner as provided under..." Title VII. The Court construes this as permitting maintenance of what appears in this action as Count I. It does not empower the Court to consider anything beyond the discrimination aspect, such as claims or causes of action arising under the CSRA. Section 7702(a)(2) does not alter this analysis because it does not authorize *this* Court to exercise jurisdiction. Consequently, since plaintiff's only viable claim under Count II is the discrimination claim set forth in Count I, the remainder of Count II may not be heard, and is remanded to the MSPB. The MSPB should consider whether any administrative action is appropriate, and in particular whether an appeal under Section 7702(f) is maintainable.

Count III is premised upon the Due Process Clause, and Count IV upon the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.* The counts are alleged to apply to both aspects of plaintiff's claims, the discrimination action and the challenge to the adverse action. Even assuming that jurisdiction exists for these counts, that they state valid causes of action, and that applicable administrative remedies have been exhausted, they must still be dismissed for failure to state a claim upon which relief can be granted.

■ Count IV is not viable regarding the allegations of discrimination because the Supreme Court has squarely held that Title VII is the exclusive judicial remedy for such claims arising out of federal employment. *Brown v. General Services Administration*, 425 U.S. 820, 835, 96 S.Ct. 1961, 1969, 48 L.Ed.2d 402 (1976). The reasoning of the Court was rooted primarily in the "balance, completeness, and structural integrity..." of the remedy that Congress had created, *id.* at 832, 96 S.Ct. at 1967, and by the belief that allowing access to the courts under remedies other than Title VII would, in effect, eradicate the specific administrative and judicial scheme established to resolve federal employment discrimination claims. *Id.* at 833, 96 S.Ct. at 1968. That reasoning is equally applicable to the CSRA, which establishes the same type of administrative and judicial procedure to resolve claims concerning adverse actions. Accordingly, Count IV is dismissed in its entirety.

■ While *Brown* did not deal with the question of whether Title VII also excluded constitutional claims concerning federal employment discrimination, numerous cases since then have held that it does. *Richardson v. Wiley*, 569 F.2d 140, 141 (D.C.Cir. 1977) (per curiam); *Gissen v. Tackman*, 537 F.2d 784, 786–87 (3rd Cir. 1976) (en banc) (per curiam); *Founding Church of Scientology v. Director, Federal Bureau of Investigation*, 459 F.Supp. 748, 759–60 (D.D.C. 1978); *Neely v. Blumenthal*, 458 F.Supp. 945, 950–54 (D.D.C.1978); *Carter v. Marshall*, 457 F.Supp. 38, 42–43 (D.D.C.1978); *Berio v. EEOC*, 446 F.Supp. 171, 173–74 (D.D.C.1978); *Mosley v. United States*, 425

F.Supp. 50, 54–55 (N.D.Calif.1977); *but see Krenzer v. Ford*, 429 F.Supp. 499, 501 n.1 (D.D.C.1977). On the basis of this authority, plaintiff's due process claims concerning discrimination are dismissed.

 Having acknowledged that *Brown* is applicable to constitutional claims regarding discrimination, and having applied the rationale of *Brown* to the CSRA, it is only logical to also apply the rationale of *Brown* to the constitutional claims plaintiff makes in connection with the adverse action. Plaintiff has not proffered any reason why it should not be applied, and she has not established that the relief she seeks under her constitutional claims is unavailable under the CSRA. There is thus no barrier to concluding that the remedy available under the CSRA excludes related constitutional claims. Accordingly, Count III is also dismissed in its entirety.